Good morning. May it please the court. My name is Mario Valencia. I represent Lorenzo Tucker. Good morning. Good morning. And I would like to reserve probably three or four minutes for rebuttal, if that's okay. In this matter, we're asking that Mr. Tucker's conviction for being a felon in possession be reversed, vacated and remanded for a new trial, as well as that his sentence be vacated because we believe the judge committed procedural error in that he counted one of the he determined that Mr. Tucker had two prior felony convictions for violent crimes. We're disputing one of those convictions, alleging it was not a crime of violence as defined by the guidelines. So those are the issues that we've presented to the court. And so I'll address first the conviction. Which is your strongest trial argument from your perspective of errors that occurred in the trial? Because I note you have plain prosecutorial misconduct. However, on a couple of those counts, there wasn't any even objection during the argument. So those are being reviewed for plain errors. That's correct. Would your stronger argument be more that having to do with you requesting an instruction that you didn't get? Well, I don't know that so much it's the instruction, although we – there are three issues, really, that we think are strong issues. One is the sufficiency of the evidence. The other, as far as closing argument, not the ones that are being reviewed for plain error, but certainly the issue of shifting the burden to the defendant, which was objected to and there was no curing instruction given. And then the fact that we did object to the instruction on constructive possession, imposed an instruction that was not given. So those three issues, we believe, are our strongest trial issues that were presented to the court. Well, sufficiency of the evidence is a pretty hard rock to push uphill. And I note one of the cases that you relied on was Nevels, which was a favorable case to you, but that was taken en banc in reverse. So that took a little bit of the wind out of your sails on that argument. Well, it did just in this sense. To the extent that Nevels held, which is what it was taken en banc for, that if you have – this is the way I understand it. If you have two equally plausible explanations for the evidence, 50-50, one an innocent explanation, the other that supports guilt, then what was happening apparently, and what happened in Nevels is my understanding, the panel decided, well, that's not reasonable doubt and we would give the benefit of the doubt basically to the defendant. If there's an equally explanation, there's an equal explanation. Well, I think the three-judge panel in Nevels weighed the evidence and the en banc panel said, no, no, no, no, no, that's not what you do. All inferences go in favor of the verdict and here there was sufficient inferences and you don't get to re-weigh the evidence. Absolutely. And they cited Jackson. Sorry. To my question, wasn't Nevels the one with the guy sleeping up in the apartment with a gun on his lap and – right? That's absolutely right. He was – I don't remember that case. Well, look, let's – let me make a suggestion from my perspective. Rather than arguing about Nevels, why don't you explain why you think there's insufficient evidence here? Okay. The reason we don't believe there's sufficient evidence here is because, and if you don't mind, I'll maybe do a little comparison with Nevel, but in this case it was a joint occupancy apartment. Mr. Tucker and his girlfriend had leased this apartment several days before the probation officers showed up at the apartment. The way that they showed up at the apartment was that Mr. Tucker's ex-girlfriend, I guess at the time, called up the probation officer and said that she was – she had moved out, was en route to Florida, and was calling for the specific reason of informing him that Mr. Tucker had a shotgun in the apartment and that that shotgun was on the top shelf in the closet. So based on that information, the probation officer testified they have to go and check that out. They went to the apartment. Nobody was there. They went to the leasing office. They got a key. They knocked. There was no answer. They opened the door. They go inside. It's a two-bedroom apartment. And sure enough, they go into – one of the officers goes into the one bedroom. The other one goes into the master bedroom. When they go into the master bedroom, there in the closet is on the top shelf, just as this lady had said, a shotgun. They take that shotgun down. There's different views as to what happened. The officer says he handled it with gloves. But anyway, he took it down. He sets it by the door and then calls Metro police officers in Las Vegas so that they can come and take the gun and take it into evidence. When they do that, Mr. Tucker shows up. When Mr. Tucker showed up, the evidence showed that initially he had no idea why they were there. Obviously, as they handcuff him and they're explaining what happens, he then has read his Miranda rights. And after he's read his Miranda rights, the testimony from Officer Gutierrez was that Mr. Tucker still didn't know. He's asking who called and what's this about. That's how it initially started. But isn't the issue whether given all the evidence, like a rational jury could find that he possessed the gun beyond a reasonable doubt? And if the gun's in a closet in the house that he owns or that he leases, and as I understand it, after the girlfriend or spouse moved out, there were only men's clothing in the closet. So if that's true, if the jury could hear evidence that the gun's in the closet and that men's clothing only are in the closet, now why isn't that enough? Plus that he knew he had handled the gun. He said he had handled it. Why isn't that enough where a rational jury could believe him or they could not believe? Well, the reason it's not enough is because up until that point, there is no knowledge of him that the gun is in there because the evidence also presented to the jury was that nobody knew that Ms. Dawn Alexander had moved out at that point in time. As far as everybody knew. But those are jury arguments. You have to give all inferences. I think also, too, there was indicia of residency. There was medication from your client, right? Yes. And that there was indication that he was in the master, that the clothes was in the master. That's where his clothes was located. And he, you know, so the evidence doesn't need to be direct. It can be circumstantial. And so it's in the place that he lives where there's indicia of residency, where you've got his clothes, where after being Mirandized, he admits handling the gun, you're going to find my prints on it because someone had it. So that's some evidence of knowledge of the existence of the gun. Why isn't that enough? Because that all happened before September 7th. And what they're alleging is that he possessed that gun on September 7th. The thing was, and the court instructed the jury on that fact. All right. But the thing is that that's the argument that you make before the jury. When you come before the appellate court, the jury didn't buy your argument. If, you know, or did not. Were you counsel there? I was not. Okay. But didn't buy counsel's argument. Those are all great arguments. And if there had been a not guilty, hey, they were entitled to do that. But at this point, we have to review the evidence that supports the verdict, and is that enough? And so ---- It's not enough because it wasn't just a jury argument. That's what the jury was instructed. We're talking about September 7th, 2007. They were not to consider. That wasn't an argument. That's what the judge instructed them. They weren't to consider what happened several days later in the back of a friend's trunk when he saw the gun or that he had handled it at that time. They were to determine the facts on what happened on September 7th. Okay. But on September 7th, on September 7th, didn't they find appellant's clothing or men's clothing in the closet? And didn't they find medication in the master bedroom? Right. And there's no ---- So couldn't a rational jury say, okay, he's got clothes, might be his clothes. They're men's clothes. It's got his medicine there. Looks like he might be living and using that bedroom, and therefore it might be his shotgun. Well, a rational jury could not find that because the evidence also showed that she had moved out that very day and that nobody knew she had. So if you have somebody, which was the defense's theory, saying that they moved out that day, of course all you're going to find is men's clothes. But the other thing was the evidence showed that there were boxes all over the apartment, that nobody ever testified what was in those boxes, whether or not there would have been somebody else's clothes or women's clothes in those boxes. That's the evidence that was presented to the jury. Why isn't that all evidence that can be argued to the jury? But once the jury decides against the appellant, how can we say that's not rational? You can say it's not rational for the two reasons cited in the Neville and Bank case. One reason is if there is still substantial support of innocence, substantial evidence to support innocence, or the other is even if you were to take all that evidence, it fails to establish one of the elements of the crime. In this case, we're alleging both. There was substantial evidence of innocence. First of all, the statements, this lady didn't testify at the trial. It was hearsay. Okay. But you can't quote the three-judge panel on Neville. You have to go on the Embank case. That's the Embank. The Embank said there were two reasons. But the other side is, too, another thing that you're not including is your client rolled up on the scene, too. It's not the police were already there. He rolled up because he was coming home. And didn't he also, when he left, give them the key and say, please lock it up? He absolutely did. And make no mistake about it, nobody's arguing, we're not certainly on appeal, nor was it at trial, that he did not live there or that he was in that room. We're saying even if you take all of that, it's not sufficient. It's a jointly occupied residence. It wasn't like in Young where they say they both testified, both testified at trial. She didn't – she never showed up. It was a hearsay statement from a probation officer. But where they both testified at trial that they had both moved out several days before the search, that's in Young. In this case, you have a lady saying, I've moved out. They did present somebody from the leasing office who testified. She had no idea this lady had moved out. She never received this lady's keys back. So literally up until that moment, somebody, both of them, were occupying that residence. And we have a joint occupancy. If you're still arguing the facts of the case originally, the facts are what Judge Callahan mentioned earlier. You're trying to make an argument. Not only was there a key found, but he asked the officers to go back into the master bedroom, retrieve his medication, give it to him so that he could take a pill, that they please go to the kitchen, get him some Gatorade so that he could take the pill. This is all argument. And the jury had the opportunity and obviously did weigh that evidence and make a factual determination as to what they believed. I agree wholeheartedly. I should just let you know you're at your three minutes. If you want to reserve the balance. Would you like me to answer the question or should I reserve it? Well, I think – yeah, I think that's up to you. But I think we're not – I don't know if we're making any headway on the sufficiency of the evidence. 30 seconds. I'll take that. Well, it's your time. You can spend it any way you want. I'm just not going to give you more. I understand that. I appreciate that. 30 seconds. I'm not making a factual argument in this sense. There's also a jury instruction issue that mere presence is not enough. And joint occupancy requires more than just contraband being found there. And in this case, that's what we're alleging, is that all they found was the contraband there, nothing else to tie him to that gun on September 7th is what we're alleging. All there was was a gun there. And everybody believing what the probation officer said was said and that he held that gun. And what we're saying is also as to the jury instruction he wanted to propose, which was that mere presence, mere proximity, mere accessibility, that's all case law. That's the law that was not enough. The distinction here, though, is not that he was merely present. It was that he was the sole occupant of that particular room. But he wasn't. That's what the evidence showed. That's a fact. The evidence shows there wasn't just a sole person living there on September 7th. Which was weighed by the jury during the course of the trial. That fact, among other facts, was given to the jury and weighed by them during the course of the trial. What we're saying is no rational juror could have found that when the very leasing office says nobody told them that they had moved out. I'll reserve the rest of my time for rebuttal. All right. Thank you. May it please the Court. Good morning. Adam Flake for the government. Regarding sufficiency of the evidence, as the Court has already pointed out, defense counsel did have the opportunity to make these arguments to the jury. They did make these arguments to the jury. The jury, to credit the government's evidence, his clothing was found in the apartment. The gun was found in his closet. He showed up at the apartment. I think we've probably all articulated those facts. Maybe you want to talk about the instruction of mere presence. Certainly, Your Honor. As we pointed out in our briefs, a mere presence instruction is appropriate when the government's case against the defendant is based on mere presence and nothing more than mere presence. That simply wasn't the case here. I mean, first of all, he wasn't merely present. He wasn't there when we did the search. He showed up later. But our case was based on the fact that he was the sole occupant of this apartment. He admitted that he knew what weapon the police were talking about before he had seen the weapon. He made up a story about having seen it, a friend of his whose name he couldn't remember, incidentally, was doing something with it. And, you know, he needed to explain why his fingerprints would be on this gun. And so he made up this story about, oh, I saw it a few days earlier and I showed her how to use it. It was far more than the – if you look at the mere presence cases, they're – I mean, it's a very descriptive term. They get somebody who's in the room with a gun or in the room with drugs and they try to prosecute them. And that's when the mere presence instruction is appropriate. Here we have considerably more than that. We have possession of the apartment. His clothes are in the apartment. He knows of the gun. His fingerprints are on the gun. The Court correctly instructed the jury on what we needed to show possession, and a mere presence instruction simply was not appropriate in this case because that instruction is not appropriate when there's more to tie the person to the contraband than mere presence. So that's the – How about the closing argument issues? Could you address closing argument issues? Particularly, appellant said there was – there was part of that to which they did object that would not be plain error. Certainly, Your Honor. The part to which the defendant did object at trial is that during the government's closing argument, the lawyer – the government's attorney made a few references. What she actually said was, if you're going to find him not guilty, you're going to have to find – you know, you're going to have to find that the following facts are true. You know, he handled the gun. You know, the story she told about the gun – the story he told about the gun was true. She was pointing out that – and we admit in our brief, to be very frank, her argument was inartful. It was a poor way to phrase it, where she said, you know, if you're going to find him not guilty, you have to believe. And that's certainly not – if you take the remark – if you take the remarks out of context, you know, they could be arguably construed as making it sound like he, the defendant, had some sort of obligation to produce evidence, which certainly he didn't. But I'd also point out that after the objection, the Court did address the jury and say, I have instructed the jury on burdens of proof already. He did that. Later, when he instructed the jury at the close of argument, he again instructed the jury on burdens of proof correctly. There's no dispute about the instruction the judge gave. You know, the judge said the government – the government has the burden of proving it beyond a reasonable doubt. The defendant doesn't have any obligation to produce evidence. Alito, counsel, on such a fundamental issue as potentially shifting the burden of proof in a criminal case, do you think that simply saying I've instructed you previously is adequate in this particular case when there is at least a plausible argument that government was trying to, or at least appeared to be shifting the burden of proof? Well, I think in this case it was appropriate. The judge pointed out that he had – I mean, the judge did not think that she was shifting the burden, first of all. He said, you know, this is argument and this is appropriate. The judge didn't think that the prosecutor was shifting the burden, but then he went ahead and said, I have instructed the jury on burdens of proof already. And then he later instructed again correctly about burdens of proof. Also, I think it's worth pointing out that immediately after the defense interposed this objection and the judge made the statement that he made, the prosecutor went ahead to explain what she meant, where she said to find the defendant not guilty, remember, you have to have some kind of reasonable doubt. Now, like I said, it's inartful. I would have preferred – as the appellate attorney, I obviously would have preferred that she use different phrasing. But she's clearly – And, you know, I think listing various facts that the jury would have to find if they were to determine that Tecker was not guilty. And then that's – but then the prosecutor comes, you know, her comments about must find that – then the prosecutor, though, had already said in order for the government to prove beyond a reasonable doubt that the defendant is guilty, there are three elements we have to prove to you. So there is kind of an intermix of that. Right. And the other is, what's your best case? I guess, are you saying it was error or are you just saying it was inartful? I'm saying it was inartful. And my best case is the Donnelly case from the Supreme Court, which I can't quite quote it, but in effect it says when a prosecutor makes a closing argument, it's rarely planned out in advance, syntax gets garbled, meaning gets garbled, and the court shouldn't automatically give the most evil meaning, the most negative meaning to the prosecutor's statements. Over the course of the lengthy trial and the lengthy closing argument and the correct instructions from the judge, the court shouldn't just assume that the statements from the prosecutor somehow infect the trial and confuse the jury about burdens of – But what about Tam? Are you familiar with Tam? Yes, I'm familiar with Tam. That case is also very helpful. It says that – There are burden-shifting statements, but they're found to be harmless? Well, yes. The court found that the district court's general instructions on the burden were sufficient to remove any sort of taint from the burden-shifting arguments. Also, I'd point out that the defense argues that the Tam case and also the Combs case stand for the proposition that there has to be an immediate curative instruction. And I don't think that the case law bears that out. The Tam case, there's no indication that it was an immediate instruction. There are several cases that we cite in our brief, the Smith case, the Tam case, that don't say anything about having the curative instruction being immediately thereafter. They all indicate that the court's correct instructions on the burden of proof were sufficient to remove any kind of taint that may have attached. Also, it's on page 31 of my brief, the Tam case, the Fleischman case, and the Smith case. I'll say that. Also, in addition to the fact that the court correctly instructed the jury, there are also several cases that we cite, Cooper and Davis, which say that even if there was a problem with burden-shifting, if the evidence is overwhelming, sufficiently overwhelming to remove any doubt that the court has about whether this – whether the argument was improper, there can be cases where there's enough evidence that the court just simply doesn't worry that the jury was confused about the burden. Counsel, you know, I would understand if someone said, okay, it's constitutional error to shift the burden of proof, but it can be harmless error if it's harmless beyond a reasonable doubt. And there are some cases where the evidence is so powerful. But here, how do you fit this case into that category? I mean, he's got a story. Yeah, I handled the gun, but it was earlier. And my girlfriend or spouse or whatever her relation was, was living here with me in the same room, and it's her gun, it's not mine. So why is the evidence so overwhelming that even if the burden of proof was improperly shifted and that's not adequately solved by the jury instructions given by the judge, that we would just say it's, you know, it's harmless? Well, I mean, we've talked a lot about what the evidence in this case showed. And it's considerable. He has the gun on his closet shelf. His possessions are the only men's possessions are found in that house. He lies to the officers. He gets up on the stand during a parole and probation proceeding, and I don't know if he set a record for perjuring himself, but he told quite a story about. Oh, I don't think it's a record. Maybe not a record. But, you know, he said, those weren't my pills. I don't even take aspirin. I've never set foot in the master bedroom. She had, the prosecutor asked him whose stuff was in the master bedroom, and he said, I don't know. She had a boyfriend. I mean, he really made a lot of false exculpatory statements which, once again, show consciousness of guilt. The evidence in this case was quite considerable. I mean, a lot of cases, pretty much every case that I know of, the defense is going to have some sort of story, but the story that he told simply wasn't credible in this case. Okay. Thank you. Are there any additional questions? We don't have any additional questions, but you still have remaining time. That's up to you. I'll cede my time. Thank you. All right. You have a minute and a half. All right. Very quickly, the government keeps saying that he lied. You know, what they want the jury to believe is that he told the truth on everything that helps their case, but he lied on everything else. He handled the gun. His fingerprints would be on it. You've got to believe that. He knew about the gun before he was told. You've got to believe that. You've got to believe that when he told them, my pills will be in there because she's a nurse. You've got to believe that. But you don't have to believe the fact that he didn't know she had moved out that day, he didn't know who had called, and that that wasn't his gun, and that, in fact, it was hers and that she kept it there to protect him. You can't have your cake and eat it, too. There are no lies in this case. They never proved that that clothes in there was his. Nobody ever came in and said that's his clothes. Everybody just assumed it because they had moved into that apartment. They also lied during closing argument, the prosecutor did, and told the jury that the evidence showed that he had taken the stand and said this boyfriend had moved in. Nobody ever said the boyfriend moved in. He said the clothes there was not his. She had found a new man. That's what he said. Quickly, as to the burden shifting, they said it just now in oral argument. The judge didn't even believe there had been burden shifting, so there was never any curative instruction. He actually had told the jury, no, I think it's within the bounds, and I've already instructed the jury on the burdens. So there was no curative instruction, not before, not after, not during, no curative instruction. And she does shift the burden because here's what she says repeatedly. All right. You're going into overtime, so wrap it up. Basically, as Your Honor pointed out, she repeatedly said you have to find this, find that, find the other to find him not guilty. He's presumed innocent. They're there to determine whether the government proved beyond a reasonable doubt that he was guilty. Thank you. Thank you both for your argument. This matter will stand submitted.
judges: England, Gould, Callahan